oral argument, 15 minutes per side. Mr. Tableman for the appellant. Thank you. I'd like to reserve 4 minutes for a bottle, please. If it please the court, Kenneth B. Tableman, I'm here on behalf of Mr. Reginald Daniels. The bottom line of this appeal, your honors, we're asking to reverse his convictions for two firearm-related matters from the Eastern District of Michigan following a jury trial and send this case back for a new trial. There are many errors that occurred in the trial of this case, and I think you could reverse the convictions on any of the errors that we have referred to. Those are the strongest ones, in your view. I actually think, this is dodging your question a little bit, I actually think this is a cumulative error case. The reason I say that is because the approach of the trial court in this case was to limit the defense, to disparage the defense, and to condense the trial process. Do you want to argue anything specific other than cumulative error? Let's start with the improper conduct of the trial court, the biased attitude of the trial court, the interruption of defense counsel that threatened to sanction defense counsel in the presence of the jury, all in a case that turned on witness credibility, in a case where the trial court limited the defense from really putting on their defense. It was a simple two-day felon in possession case. There was a dispute over what happened. Did the officers see the defendant with the gun? Did they have consent to go in the house? The consent issue, that's not, you said did they see him with a gun? That goes to guilt or innocence. Did they have consent to go in? That wouldn't go to guilt or innocence. It would go to an issue that should have been litigated pre-trial and a credibility issue that might relate to the ultimate question, did they see him with a gun, right? Yes, Your Honor, and that's the problem with this case. It's a case about credibility. It's a case where the trial court apparently decided that one category of witnesses were more believable than another category, namely the police officers versus the lay witnesses. The jury also decided that apparently, too, don't you think? They came to that conclusion, but they struggled inordinately. They were unable to reach a verdict. The judge gave an improper Allen charge to them, and they asked the judge to re-read the, re-instruct them on the concept of reasonable doubt, and the judge gave an inadequate instruction. He refused to re-read the pattern jury instruction. That's why I say there's a lot that happened in this case. He refused to re-read it? Yes. Because he asked to re-read it? Yes. And he said, no, I'm going to do something else? Yes, counsel said, I'd like you to read the pattern jury instruction. He said, no, this is what I'm doing. This whole thing was truncated. On the Allen instruction, too. He didn't follow the pattern Allen instruction. That's correct, Your Honor. Was that a deliberate choice, or was he just sort of extemporizing? Your Honor, I'd have to go back and look at the record. I don't want to mislead the court. My sense is that, well, whether he was extemporizing or not, I do know counsel made a contemporaneous objection and said, I don't like the instructions you've given to them. Did the jury say they were hung? They said we're unable to reach a decision. They did. They did. Okay. So it's a troubling case because it's a credibility case. And the troublesome part about it is then you're shortening down the defense side of it, and you're uneven-handedly conducting the trial. At least that's the perception from reading the record. Do you have a, the lawyer in the case was Mr. Barrett, defending, is that right? Yes. And I take it he, who is Mr. Barrett? He's not here before you were taken. I know Mr. Barrett. Mr. Barrett is a defense, criminal defense. I mean, I know of him. I've had a case with him 15 years ago where I was appointed by this court to review his performance as, on a 2255 appeal. He's an African-American criminal defense lawyer who practices in and around the city of Detroit. Beyond that, I... The conduct of the district judge here is somewhat harsh in treating Mr. Barrett. And sort of indicating that the district court has had some experience with him before, and is not very trusting of his motives. I mean, to put it mildly here. And I just wondered if there's anything in the record that would indicate what that's based on. Well, I'm not aware of... But it is a situation where this lawyer would have been before this judge before probably a number of times. I can't represent whether he has or he hasn't, but I do know from the record we see that he's been in practice for 31 years in the area. And I know that he appears in the Eastern District of Michigan frequently because, as I said 15 years ago, I was a counsel on an trial lawyer before. So, but beyond that, I don't know if there's any history. And there's nothing in the record to show history. And even if there was a history, I find it remarkable that the trial court would make comments before the jury. It's one thing to dress down an attorney outside the presence of a jury. I've had that experience myself where, through excess of zeal, I've gone beyond perhaps what's a proper argument or reference. But to do that in front of the jury, it's inappropriate. And it's not... This isn't... This case is a... This appeal is really kind of a fact-bound appeal. We're not applying remarkable new concepts of law here. We're just applying pretty subtle principles. And the Hickman case, the Dellinger case... Procedural constitutional error, so to speak, or procedural error, there doesn't seem to be any real error in the result. In that, the defendant does seem to be pretty clearly guilty of what the jury found him guilty of. Well, I respectfully disagree, Your Honor. This is a real horse race. I think what seems to be clear on this particular record, a gun was found in this house. That's about all we can say. In this house? In this particular house. Right. Which was his mother's house. Which was his mother's house. But we found that he was staying there. He was staying there. There was another gentleman named James Welford, I think it was, that the 14-year-old daughter said stayed in the basement where the gun was found. I mean... And the testimony was that when he did, in fact, have a gun before that in which he shot somebody or... He has a prior history, I think, of a gun-related crime. I mean, this case starts with an investigation where someone says that Mr. Daniels was involved in a shooting. So they come to the house. No warrant for arrest. Nine officers, three squad cars come purportedly to talk to him. Do you think they've got probable cause at that point? I don't know enough about it, Your Honor, to know whether they did or they didn't. Maybe that's the reason they didn't. Maybe they didn't have probable cause. That's right. Maybe they thought... So the problem with this particular case, from my view, is that we've got the judge making rulings pre-judging that one category of witnesses are to be completely believed. And that's not the judge's function. It's a credibility contest. And we don't know what the jury would have done had there been a fair trial. And even if we suspect that Mr. Daniels was guilty, which I don't concede for a moment, I mean, the appearance of justice is crucial. And to truncate the trial like this, I mean, I've never seen anything like it, to be honest. I mean, I've read these cases, these older cases, and I guess this was 250 interruptions, but it's a lot of interruptions and a lot of disparagement and a lot of pushing on the defense not to make their case. For example, the witness, Deria, Mr. Barnett wants to show her a picture of the house, and the judge says, well, what are you putting up here for? It's already been up here four years. I mean, that clearly conveys a sense that the defense case is not worthy of anything. And this is after we've had a whole series of interruptions and... I'd like to go back for a second to the motion to suppress. So you didn't get, your client didn't get an evidentiary hearing on that, correct? He did not get an evidentiary hearing. It was just ruled on the papers, which I'm not sure what you can do with that, but that's a gross error as well. He didn't rule at all, did he? He just left it to the, to offer the evidence when he came in and trial. Yes. That happens frequently. And one problem was, here on that particular point, the prosecution offered, as I understand it, what, offered affidavits, and the defense did not. So the district judge left the ruling on whether it was admissible as is normal in questions of admissibility until it was offered in evidence. There's no rule that says the judge must have an evidentiary hearing and rule on it before trial. The judge may defer the ruling and hear what comes in and make a ruling on it when it's offered at trial, right? Well, there's a rule that says the judge must make findings of fact in response to a motion to suppress. That did not occur here, and I'm quite amazed that a district judge would not have an evidentiary hearing given the record that was made on the motion hearing about where the defense counsel proffered what he planned to present, and it was a clear credibility issue on the issue of consent. Well, is the practice, I mean, I understand the view that if you're dealing with a gun case, you decide the motion to suppress before you have the trial. I mean, it would be a really bizarre trial to introduce the gun and then, you know, the judge says, oh, it's a practice in the Eastern District to have an affidavit. You let a motion to suppress, the prosecution files its side of the story, includes affidavits. When the defense describes the issues that are in dispute, the facts that are in dispute, is there usually an affidavit submitted with it? May I respond to your question? I don't know the answer to that question in the Eastern District. In the Western District, which is where I typically practice at the trial level, there's not really an affidavit practice. If you make a colorable motion, the government schedules a hearing and there's a hearing. It's just not that formalized, but I can't speak for the Eastern District. I would be surprised if someone of Mr. Barrett's experience would not have followed the proper, you know, procedure if there was such a thing. I'm not aware if there's a local rule or not here. Good morning. May I please the court? My name is Shane Crawley. I'm the attorney general and I represent the United States. Can you address that? Because at least when I was a trial judge, you have a motion to suppress, prosecutor responds. If the defendant points to factual disputes, I don't think I ever saw an affidavit, but it was a different practice. So are you saying that it is the contested issues of fact and it's not enough to make it clear to the court, which I think these attorneys did, that, well, we don't agree that they were invited in, we don't agree that they saw a gun, you know, we don't agree that there was consent, et cetera? Your Honor, that's not what we're saying. We're not saying that an affidavit or some sort of deposition-like evidence is required. However, I disagree with the proposition that there were actually facts in dispute. The motion to suppress here was a pro forma motion. It was filed two months before this evidentiary hearing. Oh, it was timely filed? Oh, yes, Your Honor. Okay. It was timely filed. However, it was pro forma. It simply said there was not probable cause. Yeah. But you were in front of the judge. And in the colloquy, it was very clear that the judge defendant was challenging all of the bases for the search, for coming into the house and finding the gun. They were challenging that the officers saw him inside with a gun and they were challenging that the officers were given permission to come into the house. I disagree, Your Honor. What he said was, I dispute their version of the facts. He offered no facts in dispute. Well, it's not his burden. It's not his burden. But the government had... It's the government's burden. That's correct, Your Honor. It is the government's burden. And if a defense attorney says I dispute that, then the government should say, okay, call my first witness. Well, Your Honor, that's where I disagree. It is the government's burden. I completely agree with that proposition. At this point, the government has put on a version of the facts through affidavit. It's not the same as testimony, I agree. But there are a version of facts there. The defendant has put forth no facts in dispute. He has no burden to put on any facts. He doesn't. But at this point, all you have is a legal issue. This is akin to... No, you don't. You have a factual issue. It's what the policeman said. And he said we disagree. So there's a factual issue. He said my client wasn't in the living room with a gun. And he said that they entered the house... I don't have that one here. Your Honor, if I may, on page 144 of the record, he says we, and this is at the hearing, three weeks before trial, this is at the hearing on the motion to suppress. He says we dispute that. We need an evidentiary hearing because we don't accept that as true. And that's not an alternative version of facts. That's simply a statement that it's not an individual saying that she did not tell them that they could enter the house or that she did not say you can speak to my mother. But at the motion, at the hearing on the motion to suppress, he then in turn asks for a second evidentiary hearing. There's no offer to call witnesses to put on a dispute. There's no offer... He says we need an evidentiary hearing because we don't accept it's true. My client was not in the living room with a gun. Your Honor, as far as the search goes, we agree that there was not a warrant. The officers came to conduct a knock and talk. They were conducting an investigation. They came simply to carry that on. When they arrived, they were invited into the home or, let me be more specific, Jamesha Smith said that they could talk to her mother about Mr. Daniels. They walked inside. At that point, no search had been conducted. Mr. Daniels approaches them. He's irate. They ask if he is on probation. This is your version of the facts. He disputes it. He said they did not look through the window and see me with a gun. That's correct, Your Honor. We need an evidentiary hearing. And the appropriate time to do that would have been at the hearing on the motion to suppress. He said it at the motion to suppress, didn't he? I mean, what transcript am I looking at? I'm looking at document 37, page ID 144, and I read this that he is asking for a second hearing, not an offer to put on witnesses at this particular hearing, but I read this as he's asking for a second hearing. Oh, the judge could not have been any more clear that he wasn't – this was a discussion about whether they were going to get an evidentiary hearing. I disagree, Your Honor. I read this transcript very differently. I read this as the judge at this point doesn't see any sort of dispute as to the facts. Whether there is consent on the facts before the court is a legal issue. Certainly, if there are facts in dispute, then there would be a need to call witnesses, but all the defense attorney is asking for is a fishing expedition. He wants to cross-examine the government's witnesses. He's not offering to put on his own alternative witnesses. I thought what happened here was the district judge had before him a motion to suppress, which is frequent, happens many, many times, all the time, and that the district judge decided that he would rule on that question and defer ruling on that question until the facts developed in the case, and then he would rule at the time whether the evidence would come in. And as far as I know, there is no particular rule under the federal rules of criminal procedure that the district court must rule before trial on whether evidence will be admissible at trial or should be suppressed, but may defer ruling and have the case go forward, and then make a ruling when the evidence is offered. That's my experience as a lawyer. I believe your experience is correct. I read it slightly differently. Let me posit another problem. Let me posit another problem. Okay. Assuming that the judge said I'm going to defer my ruling, how does the defendant get in his side of the picture when he doesn't have to present any evidence at trial? Well, Your Honor, certainly... Well, yeah, I mean, that's a good question, isn't it? Certainly, Your Honor, the gun... No, I mean, the government says if you defer your ruling, well, what are you making the defendant do? You're making the defendant put on evidence in the course of his trial, which he's not required to do. I disagree with that, Your Honor. I disagree because during cross-examination, and I still need to address Judge Merritt's question... Well, but I'm asking you the same question. I'm just saying, what's the reality of that? Have you ever had a case... I'm just elaborating. It's the same question. Have you ever had a case where a judge deferred ruling on a motion to suppress the drugs or the gun until hearing evidence at trial? Your Honor, I haven't litigated. I can't say personally I have. I'm not saying that doesn't happen, but I also haven't litigated a motion to suppress to represent... How does that work? As far as when a judge needs to rule? No, Your Honor. I always thought that if a judge defers ruling on the motion, then if the other side has got evidence to offer before the evidence is admitted, the defense counsel would say to the court, I have evidence on the question of the admissibility of that evidence, would like to have a hearing outside the presence of the jury on that to offer the problem, our defense, to this on the question of suppression. I certainly agree with that. So that is maintained that way as a question of admissibility, but you can often have, under the federal rules of criminal procedure and the federal rules of evidence, a hearing on whether evidence is admissible if there's other, if there's preliminary evidence that is relevant to that question. I agree with that proposition. I would note on page 145 of the... The Middle District of Tennessee, I tried many, many cases in criminal court, and almost always the motion to suppress was deferred, and that's the way it was handled. But that was a long time ago. I read this as not a deferral of the issue, but a conditional denial of the motion to suppress. On page 145, the district judge said, let me say that I'm about ready to agree with the government's position on this, with the understanding this is an issue we've disposed of, and as this case moves ahead and we come to a point where you can raise this issue again, you're going to be able to do it. So I read that as, I'm going to deny your motion to suppress at this time, but if for any reason anything develops, please bring it up again. And so that's why I disagree with your question, Judge Hood, that this is a situation where the defense has to put on some sort of case. The government can put on its witnesses, and if during the course of cross-examination he felt like he should renew his motion, then he could do so. I would note he did not renew his motion to suppress, and I would also note that this court can review the evidence at trial in order to support the denial of a motion to suppress. Well, how can we make a determination of the veracity of the witnesses from a transcript? Well, Your Honor, it's not the court's position, it's not, the court is not to do that. But that was the trial judge's role on a motion to suppress. Well, I would note that the issue here, as far as, there are several layers here. The first issue was, was there consent? And the parties were not in dispute as to whether there was consent to enter the home. Yes, there were. Yeah, they sure were. They took the position that they barged in behind the daughter. Well, I would note that the officers testified, Officer LaPierre stated that he asked Jamicia Smith, the 14-year-old girl, if her brother was home, or if Reginald Daniels was home. She said, yes, you can talk to my mother. That's what the officer said. And she also said that. She did not. I read the transcript very differently. She said, I told them they had to speak to my mother. And then on cross-examination she agreed that what she said was, yes, you can talk to my mother. And she opened the door, they followed in. Is that? Okay, she said that. There's contrary evidence by other witnesses as well, that they just barged in as she came in. So that seems to be a controverted fact as well. But going back to this question of suppression, there was no objection made when the evidence came. Then when the evidence was offered at the trial, there was no objection made. He did not renew his motion to suppress. But my problem with this case is the conduct of the court. Your Honor, I think if you look at the transcript selectively, as counsel here would have you then it would look quite egregious. However, if you read the context as a whole, it's a very different situation. And it's more akin to cases this court has upheld, such as Powers. I will note that the district court had to instruct the defense counsel, Marvin Barnett, eight different times to act in appropriate decorum to stop the dramatics and the theatrics. Had to instruct him to... Did you try the case, Your Honor? I did not, Your Honor. So all we've got is a cold record here, which sometimes doesn't show the warmth of the courtroom. That is true, Your Honor. But it does... I mean, with the jury there, the trial judge is treating this lawyer as though he were engaged constantly in skullduggery of some kind. It seems to me, I mean, time after time after time. Well, Your Honor, I think that the defense counsel here was trying to, as the district court put it, obfuscate the issues. He was trying to focus on issues not before the jury. I mean, they had stipulated to two of the three elements as to the prior felony and as to the interstate nexus. This was purely an issue of possession. And he's fixating on what one officer said to another or what officer walked up the basement stairs first. I apologize. His only defense is to attack the credibility of the police officers, right? Attacking the credibility of the police officers is very different than what he did, for example, in closing argument, where he essentially said they had a motivation to lie and that the government was trying to cover it up because they had to get a conviction. And that was one of the examples where the district judge had to say, you cannot sit here and impugn the veracity of the U.S. attorney when there's no evidence to support what you're saying. I agree that there were times where the district court might have said things that were not ideal. And certainly... Well, that's what we're talking about. It's a little worse than not ideal. Well, Your Honor, I would suggest that over the course of the trial, that defense counsel was unable to follow the instructions. The district judge repeatedly told him to focus on issues that were relevant to what the jury had to consider. Can you help us because... Absolutely. I mean, I agree with you. You know, we're talking about a very good judge, a man of calm demeanor and all the rest of it. And often... I mean, I was a trial judge. I mean, often a lawyer can really just try your patience. Can you show us some points in the record where counsel was doing things that caused the judge to have to respond in that way to sort of restrict this, restrict that? Yes, Your Honor. For example, and I will do that as well as address Judge Merritt's question, there were times where he was very complimentary in the course of instructing Mr. Barnett that he could not conduct himself in the manner in which he was doing so. I would point, for example, to page 290 of the record in which he said, and this is from the record, it says, Mr. Barnett, you're in a federal courtroom right now. This is not going to go. This dramatic high voice moving around, touching your client, it isn't going to happen. You went into a whole series of pretty dramatic questions about what happened, who opened the door, who pulled it open. It had nothing, nothing to do with what this jury has got to decide and you're getting back into other areas. Now, you're a very intelligent man and you know what I'm talking about. There were multiple times where he had to continue to say, stop fixating on issues that are not relevant. You're confusing the jury. But it is relevant. How they got in the house is relevant to your credibility. I apologize, Your Honor. I didn't mean to interrupt. This is not in the context of how they got in the house. This was actually in the context of Mr. Barnett focused extensively on what one of the officers said to the other when he found the gun. In reading the record, I believe what he was trying to suggest is that the Detroit police officers planted this gun. There was no evidence to suggest that, but that seemed to be what he was saying, fixating, for example, on that one officer found the gun and no one else was there to see him. And that's why he was asking, well, which one of you walked up the stairs first? I would give you another example. Isn't that a legitimate question? Is what a legitimate question? When the officer said, hey, I found this pen and nobody else saw the officer find the pen. Isn't that a legitimate? Did you see it, Officer Smith or Officer Smith lab? I would agree, Your Honor, that certainly testing the credibility of the police officers is legitimate because this is a credibility case. At the same time, I would disagree that there was any sort of suggestion that the evidence was manufactured or planted, and I would also submit that after focusing on these issues over and over and over and having had their opportunity, having had his opportunity to cross-examine them, the district judge gave him ample leeway, but it was over the course of the trial when he continued to go into areas to confuse the jury, but that's when the district judge continued to press him back. Well, yeah, and you know, sometimes lawyers do get under the skin of judges. Even somebody as even-tempered as me. But I don't tell a lawyer in front of the jury that he's engaging in flim-flam. I don't tell a lawyer in front of the jury that his conduct is improper. I call him up to the bench, and I tell him on the record that he's done this improper. I don't want to taint that jury. May I respond? Yeah. Your Honor, while I would agree that there are perhaps better ways to do this, I would is not as egregious as other cases this court has affirmed. The example of Powers, as I referenced earlier, is a prime example. Here we have, I believe there were eight different times where the district court had to instruct the defense attorney to act appropriately, and there were 15 times where he had to say to stop veering off into irrelevant areas and focus on the issues before the court. In Powers, the district judge made 26 comments, some even more egregious than this. And this court found that it did not rise to a level of hostility or bias to warrant a reversal. And so for that reason, we do not think that this is such a case. I'm going to ask you just briefly to respond to the jury instructions. Yes, Your Honor. Both of them or one in particular? Both the Allen charge and the reasonable doubt charge. Yes, Your Honor. There are two issues I would say there. As far as the Allen charge, while this court has expressed a strong preference for the failure to give the pattern instruction is reversible error, and the two issues raised by counsel do not warrant reversal here. First, it is true that the district court did not single out the majority and minority viewpoints in his instruction. That said, he gave a blanket instruction. He simply said, consider the viewpoints of your fellow jurors, which is quite different. The concern in the cases in which this court has reversed were where the court singled out a minority and instructed them to consider the viewpoint. And here, the district judge did not do this. He was talking to the jury as a whole to consider the viewpoint. And also, it was not coercive in the sense that he told them not to reach a decision simply to get the case over with, but to decide in their good conscience. Now, I must agree or must admit that the Allen charge, by reference to the fact that the case would have to be relitigated, this court has found that troubling and it's not favored. That said... It's part of the pattern instruction. Well, Your Honor, I agree with that. But this court has said the fact that the case would... the time and expense reference, not the fact that it would have to be retried. And this judge did say that the case may have to be retried. But he also referenced the anticipation and the burden it would come, not just to the less of a concern for the jury, but the fact that obviously retrying this case is also burdensome to the defendant. The anticipation in his mind. I would note that there's only one case that I was able to find where this court has reversed for coercion in an Allen charge, and that was a far more egregious case. The case of Scott back in 1977, where a district judge instructed the jury to reach a verdict because it had a very heavy docket and there were civil plaintiffs in the... civil parties in the queue. Why do you think the jury in this case was hung to begin with? Your Honor, I think that would require a great deal of speculation on my part. I think that I would actually... The way I read the record, there was just a question of how much doubt is reasonable. And I think that that's always a concept that... Did they come back and say we're hung or we can't agree? They came back after, I believe, five hours of deliberation and said that they were unable to reach a verdict. But I would note that after the Allen charge, after the instruction by the court, that they're just as able a body as any jury to decide this. Their follow-up question was, how much doubt is reasonable? Something to that effect. And I think that's a question that all juries have. Indicates they were having a debate in the jury room about what reasonable doubt means. So somebody was... That already indicated they were hung to some extent. So, I mean, this is a case in which the jury... What happened in the courtroom probably influenced all of the conversation in the jury room and that this conduct is therefore more important than it would be in a case where you don't have a jury coming back and saying, you know, we don't know exactly what reasonable doubt we should entertain here. I'm not sure that I entirely agree with that. He says it's a cumulative problem. And you've got a lot of different problems here. Well, just to address your two questions in turn. First, I'm not sure I agree with the idea that the conduct in the courtroom or what transpired in the courtroom was what was on the minds of the jury. I think there's always a question of how much doubt is reasonable and whether beyond a reasonable doubt means you can have any doubt at all. And I think that's the reason why they asked the question and that's the reason why they had the request for clarification. As to... I still need to address Judge White's question on the reasonable doubt. But as far as the cumulative error, this Court has found, has held that the accumulation of non-error does not rise to the level of a structural issue such that there is cumulative error. And we would submit that other than the accidental inadvertent disclosure of his underlying felony in the old chief violation, which we would submit is harmless error given the judge's instructions as well as the conduct of both parties in the sense that they were trying to minimize the impact to the jury. Other than that, we would not agree that there's any error such that it would rise to the level of a cumulative error. Finally, returning to your question about the reasonable doubt instruction, the District Court advised as to reasonable doubt and it did not reread the pattern instruction. Certainly, we concede that. But at the same time, it was not misleading. It was not confusing. Well, you can see that the beginning of the instruction was improper, don't you? Could you clarify that please, Your Honor? If you have a reasonable doubt, that there's no way a reasonable person can come to the conclusion that you need to come to, to in this case find defendant guilty of two charges. That's incorrect, right? Your Honor, I'm looking at page 516 of the record. Perhaps what you're referencing is different, but what the District Court read or what the District Court instructed, now I believe this was perhaps more off the cuff, but he said, reasonable doubt is something short of absolute certainty by some measurable distance. It means that if you have reasonable doubt, there's no way a reasonable person can come to the conclusion that you need to come to, in this case, find the defendant guilty of two charges. Right. That's completely incorrect. Now, he goes on from there. He does go on to there to explain the instruction. No, but that is a completely incorrect statement, isn't it? The one you just read? About a reasonable person. There's no way a reasonable person can convict him? Your Honor, off the top of my head, I'm unable to answer that question. I don't want to mislead this Court. I believe that the supplemental instruction following that where he does instruct. No, but I'm asking you, that's completely incorrect, right? That statement? Again, I cannot answer that one way or the other. Right. You just read it. I did read it, Your Honor, but what I'm saying is that I don't know for certainty that that is incorrect, and so that's why I cannot take a position on it. But I don't know what you mean by you don't know if it's incorrect. How could reasonable doubt mean that there's no way a reasonable person can come to the conclusion that he's guilty? Well, Your Honor, as I read that, he's saying that if you have a reasonable doubt, then you cannot convict. No, he says that it means that there's no way a reasonable person could think he's guilty. I guess perhaps it's that I'm not understanding your question, because I read that to say if you have a reasonable doubt, then you cannot convict. Then you could not come to the conclusion that he's guilty, because the standard is, and I see based on your face, that I'm perhaps misunderstanding or misreading it. This says that a reasonable doubt is that there's no way a reasonable person could think that he's guilty. But I guess, I mean, but the judge does go on. The judge does go on. Okay. He clarifies that a reasonable, that the beyond a reasonable doubt standard means that there is no reasonable doubt left. And it's the sort of, that essentially it's a situation where you would not hesitate to act. And I believe he doesn't use the not hesitate here, so I apologize. But what is reasonable depends on your experience in life and what you believe is a conclusion of a kind that you would make your major life decisions on. And I guess going back to the other point, perhaps that's just where I'm not getting your question, because I read that to say if you have a doubt that's reasonable, such that it would prohibit you from acting in your major life decisions, then you should not convict him. Which to me seems appropriate, but perhaps that's where I'm not getting your question. Okay. If there's nothing further, I will sit down. Oh. Thank you. The more we talk, the more it's clear that Mr. Daniels did not get a fair trial. And it's hard to untangle it, but there's a lot that went on here that was just not correct and not defendable, not defensible. And Mr. Barnett tried. He tried. He objected to the Allen charge. He asked the court to read the pattern instruction. He objected to the reasonable doubt instruction and asked the court to give the standard instruction on reasonable doubt. He tried. The court refused. Yes, but what's the reversible? Was it reversible? What is the reversible error in these two charges? What message did it give the jury as a whole that is improper? Is there a difference between the language the court used on the reasonable doubt instruction, the major life decision, and the pattern instruction, which is one of the most important decisions? I would argue there is. Major life decision is a less stringent standard than most important life decisions. You can quibble with me. That's one point. The other point is the Allen charge. It's not that clear that they're not to surrender their earnestly held decisions, and it deprives this defendant of his constitutional right to have a jury come to the conclusion that they can't come to a conclusion. That's a deficiency in the problem with the Allen charge in general, but this particular truncated charge, when this court has repeatedly said, we caution trial judges not to stray from our pattern instruction because the Allen charge itself is somewhat controversial, and I have discussed that in my brief. Finally, Your Honor, the blatant, repeated disrespect, whether warranted or not, whether correct or not, shown to the defense lawyer in the presence of the jury, combined with everything else, makes this an atypical case and one that warrants reversal. Sure, a trial judge has the right to control counsel. Does he have the right to say to the attorney in front of the jury, stop this or I'm going to sanction you? I don't think so. But whether the comment should be made and whether it's reversible error are two different things. I mean, how do you compare this case to the Power case? The content of what was said to the jury, the calling the defense lawyer's efforts flim-flam, telling him I didn't put it in my brief, I left that out, but if you look at page ID 475, right before we have a comment about over-the-top argument and mendacious argument, he tells the defense lawyer to shut up twice, once or twice, in the presence of the jury. How can those things not rise to a level that biases or prejudices the jury? If you look at the Dellinger case, I mean, it's not a complicated case. It's not a case that requires the type of control that was exerted here. I mean, I would contend that what went on here was the judge disliked that the defense lawyer had the temerity to challenge the credibility of the police officers. Why else would he shorten that questioning down? I don't know. It should be of some concern to this court, and I don't think the court should permit that type of one-sided approach in a case. That's why I started off my argument by saying you add it all up. The conclusion has to be Mr. Daniels did not get a fair trial, and I respectfully ask the court to reverse his convictions. Thank you. Thank you. Thank you. Counsel, you're CJA, are you? Yes, I am. We're very appreciative of your hard work. You act in the highest tradition of the legal profession here today. Thank you very much. Yes, we thank you.